# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

DAVID MORTON,

      Plaintiff

v.

KENNETH WILLIAMS, et al.,

      Defendants

Case No.: 3:24-cv-00402-MMD-CSD

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF No. 5, 6

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Plaintiff's motion for a temporary restraining order (TRO) and a preliminary injunction (PI). (ECF No. 5, 6.) Defendants filed a response. (ECF Nos. 15, 17-1 to 17-14.) Plaintiff filed a reply. (ECF No. 22.)

After a thorough review, it is recommended that Plaintiff's motion for a TRO or PI be denied without prejudice.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 7-1.) The events giving rise to this action took place while Plaintiff was incarcerated at Lovelock Correctional Center (LCC), Southern Desert Correctional Center (SDCC), Warm Springs Correctional Center (WSCC), and Northern Nevada Correctional Center (NNCC). (*Id.*)

The court screened Plaintiff's Complaint and allowed him to proceed with: (1) an Eighth Amendment deliberate indifference to serious medical needs claim: against Brian Williams,

Wickham, S. Austin, Dr. Marks, Mrs. Pritchard, Dr. J. Benson, Dr. Vosse, Gallardo, Kenneth Williams, and James Dzurenda related to the alleged failure to provide him with recommended treatment for his chronic foot condition; and (2) a First Amendment retaliation claim against Mrs. Pritchard. (ECF No. 7.)

Plaintiff filed a motion for a TRO or PI seeking an order to (1) provide him with evaluation and treatment with a foot specialist/podiatrist for his foot problem; (2) a full hematology cancer panel and immediate flesh biopsy, and shipment of the flesh to specialists for review, and (3) a non-slip shower stool. (ECF No. 5, 6.)

Defendants oppose the motion, arguing that Plaintiff seeks injunctive relief he has either been provided, relief that is beyond the jurisdiction of the court, or relief that is outside the scope of the pleadings. (ECF No. 15 at 9-10.) Defendants further argue that Plaintiff failed to meet the standard for a preliminary injunction. (*Id.* at 10-20.)

Plaintiff replied, arguing: (1) his motion is not moot because he was scheduled for an MRI; (2) a biopsy and full hematology blood panel for cancer is "viable and routine for NDOC[;]" (3) his request for personal non-slip ADA shower stool is an essential request because of his foot; (4) his "requests are not particular or special, but routine and essential" in this situation; and (5) he submitted medical kites about the requests made in his motion for a TRO or a PI. (ECF No. 22.)[1]

## II. LEGAL STANDARD

The purpose of a preliminary injunction or temporary restraining order is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the

---

[1] Plaintiff's reply was late, however, the court reviewed its contents and evaluated Plaintiff's arguments.

court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

Injunctions and temporary restraining orders are governed procedurally by Federal Rule of Civil Procedure 65, but case law outlines the substantive requirements a party must satisfy to obtain an injunction or restraining order. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999) ("[T]he general availability of injunctive relief [is] not altered by [Rule 65] and depend[s] on traditional principles of equity jurisdiction.").

A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant motion requires the court determine whether Plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20 (citations omitted).). The Ninth Circuit has held that "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support the issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (citation and quotation marks omitted).

There are two types of preliminary injunctions: (1) a mandatory injunction that orders a responsible party to act; and (2) a prohibitory injunction that prohibits a party from acting and preserves the status quo pending a determination of the action on the merits. *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1060 (9th Cir. 2014) (quoting *Marlyn Nutraceuticals, Inc. v.*

*Mucos Pharma GmbH & Co.,* 571 F.3d 873, 878–79 (9th Cir. 2009)). A more stringent standard is applied where mandatory, as opposed to prohibitory preliminary relief is sought. The Ninth Circuit has noted that although the same general principles inform the court's analysis, "[w]here a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction." *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984) (citation omitted). Thus, an award of mandatory preliminary relief is not to be granted unless both the facts and the law clearly favor the moving party and extreme or very serious damage will result. *See Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1979) (citations omitted). "[I]n doubtful cases" a mandatory injunction will not issue. *Id*.

The Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials. The PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, the PLRA limits the court's power to grant preliminary injunctive relief to inmates. *See Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a) therefore operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators—no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

A temporary restraining order is appropriate when irreparable injury may occur before the court can hold a hearing on a motion for preliminary injunction. *See* 11A The Late Charles Alan Wright & Arthur R. Miller, et. al., *Federal Practice and Procedure*, § 2951 (3d ed. 1999). The standard for issuing a temporary restraining order is identical to the standard for a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001); *see also* 11A The Late Charles Alan Wright & Arthur R. Miller, et. al., *Federal Practice and Procedure*, § 2951 (3d ed. 1999) ("When the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for preliminary injunction and the proceeding is not subject to any special requirements."). A temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70,* 415 U.S. 423, 439 (1974).

### III. DISCUSSION

To obtain injunctive relief, along with demonstrating a likelihood of irreparable harm, the balance of equities tips in his favor and injunctive relief is in the public interest, Plaintiff must demonstrate he is likely to succeed on the merits of his Eighth Amendment claims.

"The government has an 'obligation to provide medical care for those whom it is punishing by incarceration,' and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983." *Colwell v. Bannister,* 753 F.3d 1060, 1066 (9th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976)).

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need.

*Estelle*, 429 U.S. at 104. A claim for deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Akhtar*, 698 F.3d at 1213 (citation omitted).

Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally interfere[s] with medical treatment, or it may be shown by the way in which prison officials provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal quotation marks and citation omitted). Where delay in receiving medical treatment is alleged, a prisoner must demonstrate that the delay led to further injury. *Stewart v. Aranas,* 32 F.4th 1192, 1195 (9th Cir. 2022) (citing *Shapley v. Nev. Bd. of State Prison Comm'rs,* 766 F.2d 404, 407 (9th Cir. 1985)); *McGuckin*, 974 F.2d at 1060.

A difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs. *See Toguchi v. Chung*, 391 F.3d 1051, 1059–60 (9th Cir. 2004); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). To establish that a difference of opinion amounted to deliberate indifference, the

1    prisoner "must show that the course of treatment the doctors chose was medically unacceptable

2    under the circumstances" and "that they chose this course in conscious disregard of an excessive

3    risk to [the prisoner's] health." *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996),

4    *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014).

5    **A. Foot Evaluation/Treatment**

6        In his motion for a TRO and a PI, Plaintiff requests that Defendants be ordered to allow

7    him to go and be seen and evaluated by a foot specialist/podiatrist as NDOC "already has him

8    scheduled on a list to be seen, evaluated, [and] treated by" a specialist.

9        Defendants argue that Plaintiff's motion should be denied because he has already been

10    seen by outside foot specialists or orthopedic surgeons three times and has been referred to, and

11    is being scheduled to see, an orthopedic oncologist. (ECF No. 15 at 2.)

12        On February 1, 2023, Dr. Benson requested Plaintiff be seen by a podiatrist for

13    "Morton[']s neuroma excision" with the note that the service was requested "ASAP[.]" The

14    details section of the request form notes that Plaintiff has "severe pain from neuroma" and was

15    seen by a podiatrist on July 26, 2022, who recommended surgical excision. (ECF No. 17-5 at 7

16    (sealed).)

17        On September 28, 2023, Plaintiff was seen for an outside consultation with a podiatrist

18    and surgeon, Dr. Card, who recommended another MRI of his foot. (ECF No. 15 at 8 (citing

19    ECF No. 17-9 at 2 (sealed)).)

20        On March 25, 2024, Plaintiff underwent an MRI of his foot. (ECF No. 17-10 at 2

21    (sealed).) The MRI report notes the presence of a possible liposarcoma and recommends an

22    orthopedic consultation. (*Id.*)

23

On May 6, 2024, Plaintiff was seen by Dr. Card to review the MRI results. (ECF No. 17-11 (sealed).) Dr. Card states that "[g]iven the extent of his lesion and possible cancers differentiation[,] I will refer him to an orthopedic oncologist." (*Id.*)

Without deciding whether Plaintiff's treatment was delayed causing further injury, it is clear Plaintiff has received medical attention and treatment for his condition. Plaintiff states in his sworn declaration that he "has been examined [on] several occasions by medical providers, and recommended, approved for surgery by orthopedic, which [he has] never received for [his] condition of Morton's toe." (ECF No. 22 at 20.) Defendants have provided evidence to show that Plaintiff has been referred to see an orthopedic oncologist. (ECF No. 17-12 at 2 (sealed).)

Here, as Plaintiff seeks a mandatory injunction because he seeks Defendants be ordered to send him to be evaluated by a foot specialist, the court must be "extremely cautious about issuing a preliminary injunction." *Arizona Dream*, 757 F.3d at 1060; *Martin*, 740 F.2d at 675. To grant injunctive relief concerning serious risks to the inmate's safety, the court must find that at the time the relief will be granted there is still a serious, present risk to the inmate and that the prison officials are still acting with deliberate indifference to that risk. See *Farmer*, 511 U.S. at 845–47; *see also Helling v. McKinney*, 509 U.S. 25, 35–36 (1993) (discussing injunctive relief where there is a threat of harm to inmate's health). Consequently, given that Plaintiff has seen orthopedic specialists on multiple occasions and is being scheduled to see an orthopedic oncologist, it is recommended that Plaintiff's motion for a TRO and a PI be denied without prejudice as he has now secured the requested relief (evaluation by a foot specialist).

However, the court also recommends Defendants be directed to provide a status update, under seal, when Plaintiff's appointment to see the orthopedic oncologist is scheduled and again when the appointment has occurred. In the event Defendants do not promptly follow through

with the orthopedic oncologist evaluation and subsequent treatment, if recommended, Plaintiff

may renew his motion for injunctive relief with respect to his foot evaluation and treatment.

**B.  Hematology and Cancer Panel**

Next, Plaintiff requests the court order Defendants to provide a full hematology and

cancer panel and conduct an immediate flesh biopsy and send flesh out to appropriate specialist

to determine what flesh growths are between his toes. (ECF No. 5 at 7-8.) Again, Plaintiff seeks

the court impose a mandatory injunction because he seeks an action be taken, and the court must

be "extremely cautious about issuing a preliminary injunction." *Arizona Dream*, 757 F.3d at

1060; *Martin*, 740 F.2d at 675.

Defendants argue that "the fact that [they] "cannot force outside specialists to conduct

those procedures does not amount to deliberate indifference." (ECF No. 15 at 15, n. 7.)

Defendants also argue that Plaintiff's request constitutes a difference of opinion concerning

appropriate medical care, which does not amount to deliberate indifference. (*Id.*)

As a threshold matter, courts may not rule on the rights of persons not currently before

them. *Gurrier v. LeGrand*, No. 3:10-cv-00719-LRH, 2012 WL 458617, at *3 (D. Nev. Jan. 4,

2012) (citing *Zepeda v. U.S. Immigration Serv.*, 753 F.2d 719, 727 (9th Cir.1985) ("A federal

court may issue an injunction if it has personal jurisdiction over the parties and subject matter

jurisdiction over the claim; it may not attempt to determine the rights of persons not before the

court.")). The Federal Rules of Civil Procedure permit injunctive relief to bind "only the

following [persons] who receive actual notice of it by personal service or otherwise: (A) the

parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other

persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or

(B)." Fed. R. Civ. P. 65(d)(2). In this case, Plaintiff has not named any outside specialists who

1    would perform a hematology and cancer panel or conduct an immediate flesh biopsy and thus the

2    court does not have jurisdiction to grant this requested relief. *Gurrier*, 2012 WL 458617 at *3.

3          As Plaintiff's request is denied for lack of jurisdiction, the court need not address the

4    likelihood of success on this claim. However, Plaintiff is also unlikely to succeed on the merits

5    as to this portion of his claim because a difference of opinion between medical professionals

6    concerning the appropriate course of treatment generally does not amount to deliberate

7    indifference to serious medical needs. *See Toguchi*, 391 F.3d at 1059-60; *Sanchez*, 891 F.2d at

8    242. A review of the evidence shows that an outside specialist did recommend Plaintiff have a

9    surgical consultation for a biopsy and/or resection, however, when he was seen by an orthopedic

10   surgeon, the surgeon did not recommend or perform a biopsy but rather ordered an MRI and

11   referred Plaintiff to an orthopedic oncologist. (ECF No. 15 at 13, ECF No. 17-7 at 3 (sealed),

12   ECF No. 17-9 at 2 (sealed).) It seems Plaintiff was not denied a biopsy or cancer panel because

13   Defendants refused to so provide, but rather because the relevant outside specialists determined a

14   different course of treatment was proper or that a different specialist should be consulted.

15   Plaintiff therefore did not "show that the course of treatment the doctors chose was medically

16   unacceptable under the circumstances" or "that they chose this course in conscious disregard of

17   an excessive risk to [the prisoner's] health." *See Jackson*, 90 F.3d at 332, *overruled in part on*

18   *other grounds by Peralta*, 744 F.3d at 1083. Thus, this request for injunctive relief should also be

19   denied because Plaintiff failed to establish he is likely to succeed on the merits. *Winter,* 555 U.S.

20   at 20.

21       **C.  Shower Stool**

22          To obtain injunctive relief, along with demonstrating a likelihood of irreparable harm, the

23   balance of equities tips in his favor and injunctive relief is in the public interest, "there must be a

relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." *Pacific Radiation Oncology, LLC v. Queen's Medical Center*, 810 F.3d 631, 636 (9th Cir. 2015). "This requires a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself." *Id.* "The relationship between the preliminary injunction and the underlying complaint is sufficiently strong where the preliminary injunction would grant 'relief of the same character as that which may be granted finally.'" *Id.* (quoting *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945)). "Absent that relationship or nexus, the district court lacks authority to grant the relief requested." *Id.*

Defendants argue that Plaintiff is not entitled to injunctive relief on this final request because there are no allegations in the underlying complaint that Plaintiff requested a non-slip shower stool, that he was denied a non-slip shower stool, or that he is required to receive one under the ADA. (ECF No. 15 at 2-3, 10.)

Critically, "[w]hen a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." *Pacific Radiation Oncology*, 810 F.3d at 633. Plaintiff does not mention a non-slip shower stool, or any difficulty showering in his complaint. (*See* ECF No. 8.) In his prayer for relief, Plaintiff includes a request to be seen by an outside foot/back specialist for diagnosis and treatment plan and a flesh biopsy test and full hematology test, but he does not include any reference to a shower stool. (*Id.* at 14.) Plaintiff also did not allege claims under the ADA in his complaint.

As the request for a non-slip shower stool does not have a nexus to the conduct asserted in the underlying complaint, the court recommends that Plaintiff's motion for a TRO and a PI be denied as to this request because the court does not have authority to grant the relief requested.

1    *Pacific Radiation Oncology*, 810 F.3d at 636 (quoting *De Beers*, 325 U.S. at 220); *see Santacruz*

2    *v. Daniels*, 2024 WL 264081 (D. Nev. Jan. 24, 2024) (denying request for injunctive relief under

3    the ADA where no ADA claim appeared in operative complaint).

### IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING**

**WITHOUT PREJUDICE** Plaintiff's motion for a TRO and a PI (ECF No. 5, 6).

IT IS FURTHER RECOMMENDED that the District Judge enter an order directing

Defendants to provide a status update, under seal, when Plaintiff's appointment to see an

orthopedic oncologist is scheduled and again when the appointment has occurred.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to

this Report and Recommendation within fourteen days of being served with a copy of the Report

and Recommendation. These objections should be titled "Objections to Magistrate Judge's

Report and Recommendation" and should be accompanied by points and authorities for

consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of

appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed

until entry of judgment by the district court.

Dated: February 3, 2025.

_____
Craig S. Denney
United States Magistrate Judge